Matter of P.C. v Stony Brook Univ. (2025 NY Slip Op 01566)

Matter of P.C. v Stony Brook Univ.

2025 NY Slip Op 01566

Decided on March 18, 2025

Court of Appeals

Cannataro

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2025

No. 25 

[*1]In the Matter of P.C., Respondent,
v
Stony Brook University, et al., Appellants.

Elizabeth A. Brody, for appellants.
Alexander Klein, for respondent.

CANNATARO, J.

Petitioner, a student at respondent Stony Brook University (the University), commenced this CPLR article 78 proceeding challenging the determination that he violated the University's Code of Student Responsibility by committing sexual misconduct against another student. We hold that the determination at issue is supported by substantial evidence and therefore reverse the order of the Appellate Division.
I.
In September 2019, following a report indicating that petitioner, P.C., had engaged in behavior that violated the University's sexual misconduct policy, the University commenced an investigation. The other student involved, S.G., provided a written statement to the investigator in which she recounted the details of their encounter. P.C. declined to meet with the University's investigator.
Following the investigation, P.C. was charged with violating three provisions of the Code of Student Responsibility relating to sexual misconduct, namely, sexual harassment, nonconsensual sexual contact and nonconsensual sexual intercourse and/or penetration. The Notice of Charges detailed the allegations lodged against P.C., that he "engaged in sexual contact with a female student while she was incapacitated due to alcohol and unable to give consent," and listed specific behaviors, including choking S.G. during sexual intercourse in the woods and having sexual intercourse in S.G.'s vehicle. The Notice also set forth in full the text of the Code provisions P.C. was alleged to have violated. As relevant here, the definition of sexual harassment encompasses unwelcome sexual [*2]advances and physical conduct of a sexual nature, including sexual violence (Code of Student Responsibility § VII.C.6.a). Nonconsensual sexual contact includes "any contact of a sexual nature which is unwanted or unwelcome" (Code of Student Responsibility § VII.C.6.b) and nonconsensual sexual intercourse is "any sexual penetration or intercourse that is unwanted or unwelcome" (Code of Student Responsibility § VII.C.6.c).
II.
A hearing was held before a Review Panel composed of faculty and staff members from the University. P.C. was represented by counsel. The University's investigator placed a summary of the investigation on the record and S.G. gave a statement consistent with her prior written statement. With respect to the choking allegation, S.G. testified that she had been "black[ing] out," but "became present in the moment because of how aggressive [P.C.] was being, how I felt like I couldn't breathe and tried to get his hands off my throat. He wasn't budging and I don't know what happen[ed] after that because I blacked out again." With respect to the sexual intercourse in her car, S.G. stated that she did not recall much of what happened, but remembered "dreaming as if [she] were asleep" and, when she "woke up," she "remember[ed] panicking, asking [P.C.] if I passed out" and that he initially said no, but then said she was "only out for a moment." She also recalled swiftly terminating the encounter, returning to her dorm and crying on the phone with her friends, telling them that she "woke up and it was still happening. He didn't stop." Video surveillance footage showing the two walking together around campus at various points in the evening was played during the cross examination of S.G.
P.C. provided a brief opening statement denying that he engaged in sexual conduct with S.G. while she was incapacitated due to alcohol and unable to consent. He generally argued that S.G. was not credible, asserting that the surveillance footage showing the two walking together around campus at various points in the evening belied any claim of inability to consent due to incapacitation by alcohol. He also argued that the allegation that she was violently choked should not be believed, given that there were no marks on her neck. P.C. confirmed that he was familiar with the definition of affirmative consent set forth in the Code of Student Responsibility. P.C. then declined to answer most of the questions asked by the hearing officer on the advice of counsel, including whether he could identify actions or words by S.G. during the sexual interactions that constituted affirmative consent.
No other testimony was taken, but text messages exchanged between P.C. and another individual—a mutual friend who had introduced P.C. and S.G. that evening and had elicited a promise from P.C. that he would not have sex with S.G.—were introduced into evidence. In the messages, P.C. admitted he had sex with S.G., stating "I made my choice, and I'm sorry, and I know I f***ed up, and I won't sugar coat that." P.C. also acknowledged that he "did something terrible, and I don't know how to say I'm sorry, but I am." In explaining why he had sex with S.G., he said "I was drunk and horny and let my monkey brain have fun in the moment despite the obvious long-term outcome. What I'm saying is that if I had been sober, I would've been thinking more straight and I wouldn't have hurt her nor broken your trust."
The Review Panel found P.C. responsible for violating the charged provisions of the Code of Student Responsibility by a preponderance of the evidence at the hearing. In support of its determination, the Review Panel pointed to S.G.'s testimony that P.C. engaged in conduct that amounted to unwelcome sexual advances, unwelcome sexual contact and unwelcome sexual intercourse, primarily that S.G. did not want P.C. to choke her during sex and that he admitted to her that she was briefly unconscious while they were having sex in the car. The Panel also cited to P.C.'s text messages, in which he acknowledged engaging in sexual intercourse with the victim and stated that he "f***ed up." The Review Panel stated that it had considered all available information and determined that, regardless of whether S.G. was incapacitated by alcohol, the evidence supported the conclusion that P.C. was responsible for the charged misconduct. The Panel imposed a penalty of suspension from the University.
P.C. administratively appealed the determination, arguing that the violations of the Code of Student Responsibility were not established by a preponderance of the evidence. Despite his acknowledgement that the Review Panel did not base its determination on the question of S.G.'s inability to consent due to intoxication, P.C. nonetheless devoted a significant portion of his argument to evidence that purportedly negated any claim that S.G. was incapacitated by alcohol. He further posited that the evidence introduced at the hearing was sufficient to establish affirmative consent, citing S.G.'s statements relating to their consensual sexual activity that night. Finally, he argued that the Review Panel improperly held his decision to remain silent against him and improperly referenced his inability or unwillingness to identify evidence establishing affirmative consent, in violation of the presumption of non-responsibility contained in the Student Code.
The Appeals Committee found "no grounds upon which to alter the Review Panel's determination" and upheld the disciplinary penalty. The Committee rejected the argument that S.G. was not credible. In addition, the Committee found that the evidence supported the Review Panel's findings of responsibility on all three charges based on a preponderance of the evidence. The Committee explained that, although P.C. was permitted to decline to answer questions put to him at the hearing, the Review Panel was constrained to consider only the evidence in the record and that his decision not to answer questions limited the evidence that could be considered.
III.
Petitioner commenced this CPLR article 78 proceeding against respondents [FN1] seeking to vacate the Appeals Committee's determination, asserting that it lacked substantial evidence and that it was arbitrary and capricious and made pursuant to an error of law due to the University's failure to follow its own rules for disciplinary proceedings. In particular, he asserted that the University did not adhere to the standard requiring that misconduct be established by a preponderance of the evidence and that it failed to accord him a "presumption of innocence."[FN2]
Upon transfer from Supreme Court pursuant to CPLR 7804 (g), a majority of the Appellate Division granted the petition, annulled the Appeals Committee's determination, dismissed the charges and directed the University to expunge the matter from petitioner's academic record (221 AD3d 686 [2d Dept 2023]). Since the University Review Panel made no determination that S.G. was unable to consent as a result of incapacitation caused by intoxication, the Court deemed the only question before it to be whether substantial evidence supported the conclusion that S.G. did not otherwise consent to the sexual activity. The majority determined that substantial evidence was lacking to support that conclusion, specifically referencing S.G.'s written statement that she consented to sexual activities earlier in the evening. In addition, the majority found that reliance on P.C.'s decision not to answer certain questions violated the presumption of non-responsibility contained in the Code of Student Responsibility.
Two Justices dissented and would have confirmed the determination, denied the petition and dismissed the proceeding. The dissent concluded that the determination that petitioner violated the Code of Student Responsibility was supported by substantial evidence (see 221 AD3d at 692).
Respondents appeal as of right pursuant to CPLR 5601 (a) based on the two-Justice dissent.
IV.
We review appeals from the determinations of administrative bodies following a hearing under a substantial evidence standard (see CPLR 7803 [4]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Substantial evidence consists of "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]). We have characterized the substantial evidence standard as a "minimal" one, "demand[ing] only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks and citations omitted]). Stated otherwise, we review the administrative determination to see if it is supported by "proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]).
In performing this analysis, a reviewing court is not permitted to reweigh the evidence or "substitute its judgment for that of the agency, even if the court would have decided the matter differently" (Matter of Haug, 32 NY3d at 1046). Thus, "[w]here substantial evidence exists, . . . the determination must be sustained, irrespective of whether a similar quantum of evidence is available to support other varying conclusions" (id. [internal quotation marks and citations omitted]).
Here, as required by the Education Law, the University has incorporated the statutory definition of affirmative consent in its Code of Student Responsibility (see Education Law § 6441 [1]). "Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent" (Code of Student Responsibility § VII.C.7; Education Law § 6441 [1]). The Code further specifies that "[c]onsent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act" (Code of Student Responsibility § VII.C.7.a.ii; see Education Law § 6441 [2] [a]). Importantly, consent cannot be given when a person is incapacitated due, for example, to a "lack of consciousness or being asleep" (Code of Student Responsibility § VII.C.7.a.v.b; see Education Law § 6441 [2] [d]). Moreover, consent that is initially given, "may be revoked/or withdrawn at any time, either verbally, through physical resistance, or by losing consciousness" (Code of Student Responsibility § VII.C.7.b.i; see Education Law § 6441 [2] [c]). Any sexual activity must stop when consent is either withdrawn or can no longer be given (see Code of Student Responsibility § VII.C.7.b.ii; Education Law § 6441 [2] [f]) and the "[f]ailure to cease sexual contact promptly in response to withdrawal of consent constitutes prohibited non-consensual sexual contact" (Code of Student Responsibility § VII.C.7.b.iii). And although no longer directly at issue here, the Code separately provides that no consent can be given where a person is unable to form consent due to intoxication by drugs or alcohol (see Code of Student Responsibility § VII.C.7.a.vi; Education Law § 6441 [2] [d]).
V.
Applying the above provisions, substantial evidence supports the determination that P.C. violated the Code of Student Responsibility by engaging in unwanted sexual activity with S.G. despite her physical resistance and loss of consciousness during separate encounters. Although some aspects of the sexual encounters may have been consensual, there is ample evidence that other aspects were not. S.G.'s unrebutted testimony was deemed credible and she provided consistent evidence, both in her written statement for the investigator and in her hearing testimony, that she tried unsuccessfully to physically remove P.C.'s hands from her neck during an encounter in the woods. Under the Code of Student Responsibility, her physical resistance is inconsistent with affirmative consent.
Similarly, with respect to the allegation that P.C. had sex with S.G. in the car without her affirmative consent, S.G. consistently maintained that she lost consciousness, woke up while P.C. was still having sex with her, and that P.C. then told her she had only been "out" for a moment. Under the Code, sexual activity must stop when a person is incapacitated by lack of consciousness or being asleep. Moreover, P.C.'s own text messages acknowledge the sexual contact and, to some degree, evince a consciousness of guilt.
The evidence adduced depicting unwelcome sexual conduct by P.C. constitutes substantial evidence supporting all three charges. In reaching the opposite conclusion, the Appellate Division majority improperly reweighed the evidence by relying on S.G.'s statements concerning consensual conduct that transpired earlier in the evening, to the exclusion of her testimony regarding the contact to which she did not consent, and disregarded the conclusion that P.C.'s text messages reflected a consciousness of guilt.

Petitioner's remaining argument that the University's determination was arbitrary and capricious in that it violated its own rules and procedures is without merit [FN3]. Initially, both the Review Panel and the Appeals Committee expressly rendered their determinations under the proper preponderance of the evidence standard. Nor is there any indication that
the University failed to accord him the presumption that he was not responsible for the charged sexual misconduct (see Code of Student Responsibility § VII.D; see Education Law § 6444 [5] [c] [ii]). The presumption, in the context of this administrative proceeding, applies "unless and until proven otherwise by a preponderance of the evidence" [*3](Code of Student Responsibility § VII.D). As the Appeals Committee found, P.C. had the right to decline to testify or answer questions and, instead, hold the University to its burden. Once the University met its burden by a preponderance of the evidence, P.C.'s failure to put forth any rebuttal evidence from which the Committee could have drawn a different conclusion dictated the outcome. Statements made in the administrative determination concerning P.C.'s failure to explain how S.G. provided affirmative consent to sexual activity are consistent with a finding that he failed to rebut the evidence against him. As such, these references are not inconsistent with the presumption of non-responsibility, which would not permit the University to place the burden on P.C. to prove affirmative consent as an initial matter.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Order reversed, with costs, and petition dismissed. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.
Decided March 18, 2025

Footnotes

Footnote 1: In addition to the University, the respondents are the University's Director of the Office of Community Standards, the hearing officer, and the members of the Review Panel and the Appeals Committee.

Footnote 2: Under the Code of Student Responsibility, a "[r]espondent enjoys a presumption of not responsible unless and until proven otherwise by a preponderance of the evidence" (see Code of Student Responsibility § VII.D).

Footnote 3: At oral argument, P.C. argued that the University violated his due process rights and acted arbitrarily by failing to provide him with adequate notice of the charges against him. As noted above, the Notice of Charges alleged that he "engaged in sexual contact with a female student while she was incapacitated due to alcohol and unable to give consent." At the hearing, P.C. focused on showing that S.G. was not incapacitated on the night in question. We do not address whether any inconsistency between the Notice, the basis for the Review Panel's determination that he violated the Code, and the Appeals Committee's decision upholding that determination requires reversal because that issue is unpreserved.